IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00737-KLM

ARTHUR DeIANNI, as Trustee and Chairman of the Board of Trustees of the CWA/ITU
Negotiated Pension Plan,

     Plaintiff,

v.

PROGRESS PRINTING CORPORATION,

     Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Plaintiff's **Motion for Summary Judgment** [#41][1]

(the "Motion"). Defendant filed a Response [#45] in opposition to the Motion, and Plaintiff

filed a Reply [#46]. The Court has reviewed the Motion, Response, Reply, the entire case

file, and the applicable law, and is sufficiently advised in the premises. For the reasons set

forth below, the Motion [#41] is **GRANTED in part** and **DENIED in part**.[2]

**I. Background**

     The material facts are largely undisputed. Plaintiff brings this action under the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, as

---

     [1] "[#41]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

     [2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#15, #20].

amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), on behalf of the CWA/ITU Negotiated Pension Plan (the "Plan"). *Motion* [#41] at 1. Plaintiff serves as Trustee and Chairman of the Board of Trustees for the Plan, which is an "employee pension benefit plan" and "multiemployer plan" as defined in ERISA § 3(2), 29 U.S.C. § 1002(2), and ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), respectively. *Id.* at 1-2; *Sched. Order* [#24] at 3. The Plan is administered in Colorado Springs, Colorado, and the Plan's Trustees are "fiduciaries" as defined in ERISA § 3(21), 29 U.S.C. § 1002(21). *Sched. Order* [#24] at 3; *Motion* [#41] at 2. The Plan is governed by the CWA/ITU Negotiated Pension Plan Document (the "Plan Document") which provides that delinquent contribution employers shall be liable to the Plan for interest on the amount of delinquent contributions owing, plus liquidated damages and attorneys' fees. *Motion* [#41] at 2; *Ex. B* [#41-4].[3]

Defendant is an Illinois corporation that was an "employer" at all relevant times under ERISA § 3(5), 29 U.S.C. § 1002(5). *Motion* [#41] at 2; *Compl.* [#1] 9; *Answer* [#11] at 4. Defendant was a contributing employer in the Plan pursuant to a collective bargaining agreement ("CBA") with the Chicago Typographical Union No. 16/Communication Workers of America Local 14408 (the "Union") which required it to make benefit contributions on behalf of represented employees. *Motion* [#41] at 2; *Decl. of Gapshis* ¶¶ 6, 7, 9 (attached to *Response* [#45] at 10-11). The CBA was effective June 7, 1992, through June 6, 1995, and renewed for two or three year periods thereafter pursuant to a series of riders. *Sched.*

---

[3] Defendant states that it was not aware of the Plan Document's existence or terms prior to October 2017. *Response* [#45] ¶ 1(b).; *Decl. of Gapshis* ¶ 18 (attached to *Response* [#45] at 10-11).

*Order* [#24] at 4; *Ex. A* [#41-3] at 1. The last rider was valid through June 6, 2014. *Ex. A* [#41-3] at 2. The terms of the last rider required Defendant to contribute thirteen dollars and twenty cents ($13.20) to the Plan for each shift worked by an employee represented by the Union. *Motion* [#41] at 2; *Ex. A* [#41-3] at 2.

Despite the rider's expiration on June 6, 2014, Defendant continued to submit contributions to the Plan on behalf of its covered employees until some time in 2015. *Decl. of Castle* ¶ 6; *Decl. of Gapshis* ¶ 11 (attached to *Response* [#45] at 11).[4] Defendant failed to submit contributions for certain months in 2015. *Motion* [#41] at 3. For this reason, the Plan sent Defendant a collection letter dated August 10, 2015, demanding $1,082 in delinquent contributions with interest for the period of March through June 2015; and $54.98 in accrued interest for late payments made for the period of August 2014 through February 2015. *Ex. C* [#41-5]. The Plan requested that Defendant submit these amounts by August 24, 2015, which Defendant failed to do.

By letter dated September 30, 2015, the Plan notified Defendant that due to its failure to pay contributions fro the period of March through September 2015, the Plan's Trustees had terminated Defendant's status as a "Contributing Employer," effective as of the letter date. *Ex. D* [#41-6]; *Decl. of Castle* [#41-1] at 11. The letter further stated that "[b]y terminating through non-payment of contributions, [Defendant] has effectively withdrawn as a contributing employer and may owe statutory withdrawal liability to the Plan in addition to the delinquent contributions and interest." *Ex. D* [#41-6]. After receiving the

---

[4] Plaintiff initially indicates that Defendant consistently paid contributions to the Plan until May 2015 but later states that the Plan sought delinquent contributions going back to March 2015. *Decl. of Castle* ¶¶ 6, 9; *Ex. C* [#41-5].

September 30, 2015 letter, Defendant made one payment of $607.20 on October 2, 2015, toward the March and April 2015 delinquency; and another payment of $384.98 on December 29, 2015, toward the September 2015 delinquency. *Decl. of Gapshis* ¶ 16 (attached to *Response* [#45] at 12).[5]

On January 11, 2016, the Plan sent Defendant a withdrawal liability demand totaling $102,544, to be paid in eighty quarterly installments. *Ex. E* [#41-7]. The letter included the liability calculation and a schedule of payments which made the first quarterly installment of $1,693 due within sixty days. *Id.* The letter also notified Defendant of its rights under the MPPAA to request a review of the liability determination, identify inaccuracies in the calculation, and provide additional relevant information within ninety days. *Id.*; *Motion* [#41] at 3-4. Defendant never exercised these rights nor did it initiate arbitration to challenge the withdrawal liability determination or assessment, as required under the MPPAA.

Defendant did not submit the first quarterly payment within sixty days. *Decl. of Castle* ¶ 14. On May 4, 2016, the Plan notified Defendant "that if the failure to pay is not cured within sixty (60) days, the [Defendant] will be in default, and the full amount of the withdrawal liability shall become immediately due and owing." *Ex. F* [#41-8]. Defendant did not make any payment within the sixty-day cure period that ended on July 3, 2016. *Decl. of Castle* ¶ 16.[6]

---

[5] Plaintiff appears to acknowledge these payments by stating that "[i]n the following weeks, [after the August 10, 2015 demand letter, Defendant] partially cured its delinquency, but remained in arrears on contributions from May 2015." *Motion* [#41] at 3; *Decl. of Castle* ¶ 10.

[6] Defendant states that it submitted $1,693.00 to the Plan on July 15, 2016, after the deadline to cure expired, toward the "remaining deficiency claimed by the Plan." *Decl. of Gapshis* ¶ 16 (attached to *Response* [#45] at 12. Plaintiff does not acknowledge this payment in the present Motion [#41] or in its Reply [#46]. The Court notes however that Plaintiff's Complaint [#1] indicates that a $1,693.00 payment from Defendant was accepted as the first quarterly installment on or

Plaintiff filed this lawsuit on March 23, 2017. *See Compl.* [#1]. He has asserted two claims on behalf of the Plan: (1) collection of unpaid employee benefit contributions in the amount of $1,346.40 ("Claim One"); and (2) collection of unpaid withdrawal liability in the amount of $100,851 ("Claim Two"). *Id.* ¶¶ 15-30. In the present Motion [#41], Plaintiff asserts that there is no genuine issue of material fact regarding either Claim One or Claim Two because the material facts are undisputed: in sum, that Defendant was obligated under ERISA and the MPPAA to submit employee benefit contributions and withdrawal liability payments to the Plan and failed to do so. Thus, Plaintiff argues, the Court is required to find that the Plan is entitled to judgment in its favor as to both claims as a matter of law. Defendant does not appear to dispute any material fact or raise any new facts that would foreclose summary judgment. Instead, Defendant argues that it is not legally obligated to pay these amounts based on the undisputed record before the Court.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), summary judgment should enter if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

about July 26, 2016, but that Defendant's Answer [#11] denies this payment was made as the first quarterly installment. *See* [#1] ¶ 28; [#11] at 12. Regardless, Plaintiff has deducted this amount from the outstanding withdrawal liability assessment and Defendant has not made any additional payments to the Plan since July of 2016.

A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may

be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
>> . . .
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

## III. Analysis

As mentioned above, Plaintiff moves for summary judgment on both claims asserted against Defendant. Claim One seeks to collect from Defendant $1,346.40 in unpaid employee benefit contributions for the period of May 2015 through August 2015, plus interest and liquidated damages pursuant to 29 U.S.C. §§ 1132(g)(2), 1145. Claim Two seeks to collect from Defendant $100,851 in unpaid withdrawal liability under the MPPAA, plus interest and liquidated damages pursuant to 29 U.S.C. §§ 1399(c)(5), 1401(b)(1), 1132(g)(2). As to both claims, Plaintiff seeks attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(2). Plaintiff bears the burden of proof on both claims at trial. Accordingly, he bears the burden to come forward with sufficient evidence to establish a prima facie case as to both claims.

### A. Claim One - Delinquent Contributions

Plaintiff argues that the Plan is entitled to collect $1,346.40 in unpaid employee benefit contributions, plus interest and liquidated damages, from Defendant as a matter of

law because it is undisputed that Defendant failed to pay contributions in that amount for the period of May 2015 through August 2015. In response, Defendant argues that the CBA's expiration on June 6, 2014 relieved Defendant of any obligation to pay those contributions and, even if it did not, those contributions have since been paid.

### 1. Subject Matter Jurisdiction

The Court sua sponte raises the issue of subject matter jurisdiction. "[I]t has long been recognized that a federal court must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceeding." *Shaw v. AAA Engineering & Drafting Inc.*, 138 Fed.Appx. 62, 67 (10th Cir. 2005) (citing *State Farm Mut. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1270-71 (10th Cir. 1998)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

It is well established that "[t]he party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). Plaintiff cites to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and ERISA § 502(f), 29 U.S.C. § 1132(f), as the jurisdictional bases for its delinquent contribution claim to enforce ERISA § 515, 29 U.S.C. § 1145. *Compl.* [#1] ¶ 2. Although ERISA § 502 does grant federal district courts exclusive jurisdiction over civil actions brought by a multiemployer plan's fiduciary to collect delinquent contributions under ERISA § 515, jurisdiction may be precluded where, as is here, the contributions sought are for periods after a collective bargaining agreement has expired. *See* 29 U.S.C. §§ 1132(e)(1), 1132(f), 1145,

In *Laborers Health and Welfare Trust Fund for Northern California v. Advanced*

*Lightweight Concrete Co., Inc.*, 484 U.S. 539 (1988), the United States Supreme Court interpreted ERISA §§ 502 and 515 to grant federal courts exclusive jurisdiction only when the dispute concerns "promised contributions" owed under an effective collective bargaining agreement. The Court reached this interpretation by first noting that an employer who is party to a collective bargaining agreement may have two distinct legal obligations to contribute to a pension plan: (1) a contractual duty imposed by the terms of the agreement, and (2) a statutory duty imposed by the National Labor Relations Act (NLRA), 29 U.S.C. § 141, *et seq. Advanced Lightweight*, 484 U.S. at 541. Unlike the contractual duty, which extinguishes by expiration of the agreement, the statutory duty may extend beyond expiration where "an employer's failure to honor the terms and conditions of an expired collective-bargaining agreement pending negotiations on a new agreement constitutes bad faith bargaining in breach of sections 8(a)(1), 8(a)(5) and 8(d) of the [NLRA]." *Id.* at 544 n.6 (quoting *NLRB v. Katz*, 369 U.S. 736, 743 (1962)). Because, "[a]s a general rule, federal courts do not have jurisdiction over activity that is arguably subject to § 7 or § 8 of the NLRA, [ ] they must defer to the exclusive competence of the National Labor Relations Board [(NLRB) in those matters]." *Id.* at 543 n.4 (quoting *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982)) (internal quotation marks omitted).

ERISA § 515 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "The liability created by [ERISA] § 515 may be enforced by the trustees of a plan by bringing an action in federal district court pursuant to [ERISA] § 502."

*Advanced Lightweight*, 484 U.S. at 547. Based on the above text and legislative history of ERISA §§ 502 and 515, the Court found that those statutes described the employer's contractual obligation to make contributions but omitted any reference to the noncontractual obligation imposed by the NLRA. *Id.* at 545-49. Therefore, according to the Court, ERISA §§ 502 and 515 do "not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the [NLRA]." *Id.* at 549.

As the Tenth Circuit summarized, *Advanced Lightweight* "held that, under [ERISA §§ 502 and 515], original federal jurisdiction was limited to actions for contractual contributions; [and that] contributions owed solely as a result of a noncontractual statutory duty to maintain the status quo properly are sought initially in an action before the NLRB." *Trustees of Colorado Pipe Indus. Pension Tr. v. Howard Elec. & Mech. Inc.*, 909 F.2d 1379, 1384 (10th Cir. 1990) (citing *Advanced Lightweight*, 484 at 548-49) (citations omitted). In *Colorado Pipe*, 909 F.2d 1379, the plaintiff-trustees conceded that *Advanced Lightweight* posed a "jurisdictional bar to their [ERISA § 502] action in district court" where the they "sought noncontractual contributions . . . for the period after the expiration of the collective bargaining agreement between [the defendant-employer] and the unions[,] [and] [t]he only source of [defendant-employer's] obligation to make these payments was the NLRA requirement that it maintain the status quo during the period of negotiation before impasse." *Colorado Pipe*, 909 F.2d at 1384.

This Court recognizes that, outside of the Tenth Circuit, courts have found that *Advanced Lightweight* does not bar federal jurisdiction where a plan claims a right to postcontract contributions not under the NLRA, but as a contractual right created by the

employer's intent to remain bound to an expired agreement.  *See e.g.*, *Auto Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 745 (7th Cir. 2007) (holding that jurisdiction under ERISA was proper because "[u]nlike the plaintiff trust fund in [*Advanced Lightweight*], the Funds here do not rely on any alleged statutory duty [the employer] might have to continue contributing during the post-contract status quo period. Instead, the Funds claim only that [the employer] has violated a contractual duty stemming from the participation agreements."); *Brown v. C. Volante Corp.*, 194 F.3d 351, 353-54 (2d Cir. 1999) (holding that *Advanced Lightweight* did not preclude federal jurisdiction where trustees claimed the right to contributions not under the NLRA, but under a theory that the employer had adopted  two un-signed collective bargaining agreements.); *Greater Kansas City Laborers Pension Fund v. Superior Gen. Contractors, Inc.*, 104 F.3d 1050, 1058 (8th Cir. 1997) ("Defendants' reliance on *Advanced Lightweight* is misplaced, because the Funds, unlike the plaintiff trustees in *Advanced Lightweight*, did not claim that defendants' failure to make fringe benefit contributions constituted an unfair labor practice."); *UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994) (holding that jurisdiction under ERISA was proper because at issue was whether the employer was obligated to contribute during the term of a collective bargaining agreement to which it was not a party.).

In the instant case, however, Plaintiff has not provided the Court with any bases to exercise subject matter jurisdiction over Plaintiff's delinquent contribution claim.  Plaintiff seeks to collect contributions due after Defendant's CBA expired but does not indicate whether Defendant's obligation to pay these amounts derives from a contractual or

statutory duty. Plaintiff merely states that Defendant violated the CBA and it's obligation to the Plan by not submitting contributions, but nowhere addressees the effect of the CBA's expiration. Plaintiff fails to do so despite Defendant's argument that the obligation to contribute extinguished when the CBA expired.

For this reason, the Court concludes that it may lack subject matter jurisdiction over Plaintiff's claim for delinquent contributions and that Plaintiff has failed to meets its burden on this threshold issue. Accordingly, the Court **denies** Plaintiff's Motion for Summary Judgment [#41] with respect to Claim One for delinquent contributions and **dismisses without prejudice** Claim One against Defendant.

**B.      Claim Two - Withdrawal Liability**

Plaintiff argues that the Plan is entitled to collect $100,851 in withdrawal liability, plus interest and liquidated damages, from Defendant as a matter of law because there is no question of material fact that the Plan adhered to the procedures for assessing withdrawal liability under the MPPAA and that Defendant defaulted on its withdrawal liability payments. Plaintiff further asserts that Defendant is precluded by law from disputing liability because it failed to initiate arbitration as required under the MPPAA. In response, Defendant argues that it cannot be held liable for the withdrawal assessments because the MPPAA does not apply to "involuntary" withdrawals, the Plan Document did not authorize the Plan to unilaterally terminate Defendant's "Contributing Employer" status, and Defendant's CBA with the Union previously expired on June 6, 2014. Defendant, however, fails to cite any authority for its arguments and does not address why these arguments are not waived by its failure to arbitrate.

**1.      Subject Matter Jurisdiction**

In contrast to Claim One, the Court finds that it does have subject matter jurisdiction over Plaintiff's withdrawal liability claim despite the CBA's expiration. In *Colorado Pipe*, *supra*, the Tenth Circuit applied *Advanced Lightweight* to the same jurisdictional issue this case presents. There, trustees of a multiemployer pension plan sued an employer for "1) postcontract contributions under [ERISA § 502] for contributions accrued after expiration of the collective bargaining agreement and 2) withdrawal liability . . . under [MPPAA § 1381]." *Colorado Pipe*, 909 F.2d at 1382. While the Tenth Circuit agreed that *Advanced Lightweight* posed a "jurisdictional bar" to the postcontract contribution claim, it held that withdrawal liability was "a distinct federal remedy" which "explicitly vested federal courts with jurisdiction to adjudicate such claims." *Colorado Pipe*, 909 F.2d at 1385 (10th Cir. 1990) (citations omitted). This is because, as *Advanced Lightweight* explained, "[withdrawal] liability arises when an employer ceases to have an 'obligation to contribute' to the plan. That term is defined for the purposes of the withdrawal liability portion of the statute in language that unambiguously includes both the employer's contractual obligations and any obligation imposed by the NLRA." 484 U.S. at 545-46 (footnotes omitted). Therefore, in the present case, the Court has subject matter jurisdiction over Plaintiff's withdrawal liability claim.

### 2.    MPPAA Withdrawal Liability Generally

The MPPAA provides that "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under [29 U.S.C.A. § 1381(b)] to be the withdrawal liability." 29

U.S.C.A. § 1381(a).[7]   A "complete withdrawal . . . occurs when an employer (1) permanently ceases to have an obligation to contribute under the plan." 29 U.S.C.A. § 1383(a)(1).   "[T]he term 'obligation to contribute' means an obligation to contribute arising--(1) under one or more collective bargaining (or related) agreements, or (2) as a result of a duty under applicable labor-management relations law...." 29 U.S.C.A. § 1392 (a).

As the Tenth Circuit explained, Congress created withdrawal liability in response to the concern that:

> [Under ERISA,] employers had an incentive to withdraw from financially weak multiemployer plans to avoid paying for any shortfalls if the plan ended. Employer withdrawals diminished a plan's contribution base, which increased the contribution rate for remaining contributing employers.   If a plan terminated with insufficient funding, the remaining contributing employers were left to pay for the shortfall.

*Ceco Concrete Const., LLC v. Centennial State Carpenters Pension Tr.*, 821 F.3d 1250, 1252-53 (10th Cir. 2016) (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 608 (1993); *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722 n.2 (1984)).   In short, "[w]ithdrawal liability discourages withdrawal and compensates pension plans when it occurs."  *Id.* at 1253.

The dollar amount of withdrawal liability is determined by the plan sponsor using a complex formula based on "the employer's proportionate share of the plan's 'unfunded vested benefits' calculated as the difference between the present value of vested benefits and the current value of the plan's assets."  *R.A. Gray*, 467 U.S. at 720 (citing 29 U.S.C.

---

[7]  The difference between a "complete withdrawal" and "partial withdrawal" are described in 29 U.S.C.A. §§ 1383 and 1385; and impacts the calculated amount of withdrawal liability.  *See* 29 U.S.C.A. § 138(b).  In this case, it is not disputed that if Defendant withdrew from the Plan at all, it was a "complete withdrawal" under the statute.

§§ 1381, 1391). "As soon as practicable after an employer's complete or partial withdrawal," the plan sponsor must "notify the employer of the amount of the liability . . . and demand payment...." 29 U.S.C. § 1399(b)(1). No later than ninety days after the employer receives that notice, the employer may ask the plan sponsor to review its withdrawal liability determination and contest the liability amount assessed. 29 U.S.C. § 1399(b)(2)(A). "After a reasonable review of any matter raised, the plan sponsor" must notify the employer of its decision. 29 U.S.C. § 1399(b)(2)(B).

Importantly, however, an employer's liability payments under the plan sponsor's payment schedule become due "no later than sixty days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C.A. § 1399(c)(2). Under this "pay now, dispute later collection procedure[,]" an employer must begin payments in accordance with the plan sponsor's payment schedule "even if the employer challenges the trustees' withdrawal liability determination." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 197 (1997) (internal quotation marks and citations omitted). "Should the employer fail to pay according to the schedule, the plan may, at its option, invoke a statutory acceleration provision" which allows the plan sponsor to collect "the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id.* at 192; 29 U.S.C. § 1399(5).[8]

---

[8] The MPPAA's six-year statute of limitations on an action to recover unpaid withdrawal liability begins to run when the employer defaults on an installment due and payable under the plan sponsor's schedule. *Bay Area Laundry*, 522 U.S. at 201-02.

### 3.     MPPAA Withdrawal Liability Arbitration Requirement

By creating withdrawal liability, "Congress did not intend to create a new, broad category of litigation that would force benefit plans to spend their assets on court costs and attorneys fees." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. BES Services, Inc.*, 469 F.3d 369, 374 (4th Cir. 2006).   Rather, Congress required that "*[a]ny dispute* between an employer and the plan sponsor of a multiemployer plan concerning a determination [of withdrawal liability] shall be resolved through arbitration." 29 U.S.C.A. § 1401(a) (emphasis added).   Arbitration may be initiated by either party within sixty days after the earlier of (A) the plan sponsor's notice of decision on an employer's request for review or (B) 120 days after the employer's request for review.   *Id.*   However, if arbitration is not initiated, "the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor [and the sponsor] may bring an action in a State or Federal court of competent jurisdiction for collection." 29 U.S.C. § 1401(b)(1).   Courts have uniformly interpreted this provision to mean that "[b]y failing to arbitrate, an employer [in effect] waives any defenses to collection actions that could properly have been heard before the arbitrator." *Colorado Pipe*, 909 F.2d at 1385 (citing *In re Centric Corp.*, 901 F.2d 1514, 1518 (10th Cir. 1990); *New York Teamsters Conference Pension & Retirement Fund v. McNicholas Transp.*, 848 F.2d 20, 23-24 (2d Cir. 1988); *I.A.M. Nat. Pension Fund v. Clinton Engines*, 825 F.2d 415, 429 (D.C. Cir. 1987)).

"Thus, in addition to performing the technical function of calculating an employer's withdrawal liability, MPPAA arbitrators may determine whether an employer has completely withdrawn from a plan, resolve labor issues to the extent necessary to determine whether an employer has withdrawn, and engage in statutory interpretation of the MPPAA." *Id.*

(citations omitted). Although the MPPAA's arbitration requirement is akin to "an issue of exhaustion of administrative remedies, [rather than] an absolute jurisdictional bar[,]" the Tenth Circuit has found that the defenses not waived by a failure to arbitrate include only those that assert constitutional questions, questions of statutory interpretation outside the MPPAA, allegations of fraud, and laches. *Id.* at 1385-86; *see also Trustees of Utah Carpenters' & Cement Masons' Pension Tr. v. New Star/Culp L.C.*, No. 2:07-CV-699 (TC), 2009 WL 321573, at *3 (D. Utah Feb. 9, 2009) (stating "that courts in the Tenth Circuit only excuse the failure to arbitrate in exceptional circumstances."). While an employer's failure to arbitrate produces a "Draconian result," the Tenth Circuit understood that "[n]evertheless, Congress deemed that this harsh remedy was appropriate when it enacted the MPPAA and [the Court declined] to second-guess its judgment..." *Id.* at 1386-87; *see also I.A.M. Nat. Pension Fund, Plan A, A Benefits v. Clinton Engines Corp.*, 825 F.2d 415, 422 (D.C. Cir. 1987) ("arbitration reigns supreme under the MPPAA. And the consequences of failing to arbitrate . . . any dispute concerning a determination made under [the MPPAA's withdrawal liability provisions] are clearly enunciated by the statute." (internal quotation marks omitted)).

The Tenth Circuit has not articulated a clear test for determining whether a multiemployer plan is entitled to judgment in a withdrawal liability action where the employer has failed to arbitrate. However, courts in other circuits have done so by requiring the plan to show that: (1) the plan was a "multiemployer plan" and the defendant was an "employer" as those terms are defined in ERISA, (2) the plan notified the defendant of the assessed liability in accordance with the MPPAA, and (3) the defendant failed to timely initiate arbitration. *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 597 (7th Cir.

2008) (citation omitted); *accord. Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 448 (4th Cir. 2015); *see also Carpenters Pension Tr. Fund for N. California v. M.A. Lindquist Co.*, No. CIV. 10-0812-SC, 2011 WL 499947, at *3 (N.D. Cal. Feb. 8, 2011) ("a pension fund need only establish . . . (1) that the defendant is an "employer" under the MPPAA; (2) that the pension fund notified the defendant of its withdrawal liability as required by the MPPAA; and (3) that the defendant failed to timely initiate arbitration.) (citing *Bd. Of Trs. Of Trucking Employees of N. Jersey Welfare Fund v. Canny*, 900 F.Supp. 583, 592 (N.D.N.Y. 1995)).

### 4.    Plaintiff Has Established a Prima Facie Claim for MPPAA Withdrawal Liability

Based on the MPPAA's statutory framework and the above precedent, the Court finds that Plaintiff has made a prima facie showing that the Plan is entitled to withdrawal liability.  First, it is undisputed that the Plan is a "multiemployer plan" as defined in ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), and that Defendant was an "employer" under ERISA § 3(5), 29 U.S.C. § 1002(5).   Second, Plaintiff provided evidence showing the Plan complied with the MPPAA's procedures for notifying Defendant of the withdrawal liability assessment: on September 30, 2015, the Plan advised Defendant of the withdrawal liability determination; on January 11, 2016, the Plan notified Defendant of the amount of the liability in the sum of $102,544 and demanded payment in accordance with 29 U.S.C. § 1399(b)(1); and the January 11, 2016 letter advised Defendant of its right under 29 U.S.C.A. § 1399(b)(2)(A) to request a review of the determination, identify inaccuracies in the calculation, and provide additional relevant information within ninety days.  Third, Defendant does not dispute that it failed to request review, initiate arbitration, or submit the

first quarterly withdrawal liability payment within the sixty-day deadline prescribed by 29 U.S.C.A. § 1399(c)(2). The Plan then notified Defendant that the first quarterly withdrawal liability payment had not been received, directed Defendant to cure the delinquency, and advised that if payment was not received within sixty days Defendant would be in default. Defendant failed to cure the delinquent payment within sixty days. As a result, the Plan invoked the MPPAA's statutory acceleration provision, 29 U.S.C.A. § 1399(5), which made the outstanding amount of the withdrawal liability assessment immediately due and payable with interest and liquidated damages. Therefore, unless Defendant can show that there is a genuine issue of material fact or a viable defense to Plaintiff's claim, Plaintiff's motion should be granted with respect to Claim Two.

5.     **Defendant Fails to Raise a Genuine Issue of Material Fact or Viable Defense**

As stated above, Defendant does not dispute that it failed to make timely payments under the withdrawal liability payment schedule, nor does it dispute that it failed to initiate arbitration to contest the withdrawal liability determination. Although Defendant includes a "Statement of Disputed Facts" section in its Response [#45], Defendant does not provide any disputed fact material to the withdrawal liability claim. Instead, Defendant argues that it cannot be legally subject to withdrawal liability under the MPPAA because: (1) the MPPA does not apply to "involuntary" withdrawals, (2) the Plan Document did not permit the Plan to unilaterally terminate Defendant's "Contributing Employer" status, and (3) Defendant's CBA with the Union previously expired on June 6, 2014. Thus, the central question for the Court is whether Defendant effectively waived these arguments by failing to initiate arbitration as required by the MPPAA. Defendant's only attempt at addressing this

question is quoting one case from the Southern District of New York for the proposition that "ERISA's exhaustion requirement is not a categorical bar to this Court's jurisdiction, but rather a prudential matter within the Court's discretion." *Response* [#45] ¶ 8 (quoting *National Retirement Fund v. Caesars Entertainment Corp.*, No. 15-CV-2048 (LAK) (JLC), 2015 WL 7254198 (S.D.N.Y. Nov. 17, 2015)).

Defendant's first argument is that it cannot be held subject to withdrawal liability because the MPPAA does not apply to involuntary withdrawals. *Response* [#45] ¶¶ 6-7. According to Defendant, the MPPAA's withdrawal liability provisions "appear to solely deal with [an employer's] voluntary [withdrawal] from a plan, not the [p]lan's involuntary termination of those [employers]." *Id.* Defendant cites no authority in support of this argument and provides no explanation as to why the Court should not deem the argument waived for Defendant's failure to arbitrate. Instead, Defendant merely rests this theory on the fact that Plaintiff cites one case and "other cases . . . that involved employers who voluntarily withdrew from their respective plans rather than having their 'Contributing Employer' status involuntarily terminated." *Id.* ¶ 7. In the very next paragraph, however, Defendant cites *National Retirement Fund v. Caesars Entertainment Corp.*, No. 15-CV-2048 (LAK) (JLC), 2015 WL 7254198 (S.D.N.Y. Nov. 17, 2015), which did involve a multiemployer pension plan seeking withdrawal liability from employers who had been "involuntarily terminated" from the plan. *See Response* [#45] ¶ 8. In that case, "the [plan's] trustees determined that it was in the [plan's] best interest to cease accepting contributions from the [employers], thereby terminating the [e]mployers' participation in the [plan]." 2015 WL 7254198 at * 1 (citations and footnote omitted). While the applicability of withdrawal liability to involuntary withdrawals was not at issue in that case, the court denied the

employers' motion to dismiss the withdrawal liability claim.

Aside from this apparent oversight by Defendant's counsel, it appears quite settled that withdrawal from a multiemployer pension plan need not be voluntary for withdrawal liability to apply. *See e.g., Bd. of Trustees of W. Conference of Teamsters Pension Tr. Fund v. Thompson Bldg. Materials, Inc.*, 749 F.2d 1396, 1407 (9th Cir. 1984) ("If employers escaped liability merely because their withdrawals were involuntary, a major protective feature of the MPPAA would be undercut."); *Central States, Southeast & Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 999 F.Supp. 1153, 1162-1164 (N.D. Ill.1998) (finding "that Congress' decision to impose [withdrawal] liability on employers for voluntarily and involuntarily withdrawals is rational and not arbitrary."); *Centennial State Carpenters Pension Trust Fund v. Woodworkers of Denver, Inc.*, 615 F.Supp. 1063, 1065 (D. Colo.1985) (granting summary judgment on behalf of pension plan where the employer's withdrawal occurred involuntarily by the employees' decertification of their union); *Pacific Iron & Metal Co. v. Western Conference of Teamsters Pension Trust Fund*, 553 F.Supp. 523, 525 (W.D. Wash. 1982) (holding that the MPPAA does not exclude involuntary withdrawal liability due to employees' vote to decertify their union). Moreover, whether or not withdrawal liability applies to "involuntary" withdrawals is a question that requires "[engaging] in statutory interpretation of the MPPAA," a function within the exclusive competence of an arbitrator. *Colorado Pipe*, 909 F.2d at 1385 (citation omitted).

Accordingly, because this argument appears to lack merit and Defendant provides no explanation as to why the argument is not waived due to its failure to arbitrate, the Court finds that Defendant's first argument fails to raise a genuine issue of material fact or viable defense such that Plaintiff's motion should be denied.

Defendant next argues that the Plan did not have "a lawful basis for calculating withdrawal liability" against Defendant because "the Plan Document does not expressly provide for the Plan's involuntary termination of a Contributing Employer." *Response* [#45] ¶ 3-4. Again, Defendant does not provide any authority for the proposition that a multiemployer plan may only seek withdrawal liability, a statutory remedy, if authorized to do so in its governing documents. Moreover, "[e]ven where there are questions as to whether the pension plan [has] any basis to assess withdrawal liability, the failure to arbitrate is fatal." *Trustees of Utah Carpenters' & Cement Masons' Pension Tr. v. Indus. Power Contractors Plant Maint. Servs.*, No. 2:09CV929DAK, 2:10CV334DAK, 2011 WL 6130932, at *6 (D. Utah Dec. 8, 2011) (citation omitted). For these reasons, the Court finds this argument fails to raise a genuine issue of material fact or viable defense such that Plaintiff's motion should be denied.

Defendant's third argument is that it cannot be subjected to withdraw liability because the CBA obligating Defendant to pay contributions expired on June 6, 2014. *Response* [#45] ¶¶ 1(a), 4. Defendant again cites no authority in support of this argument and nowhere addresses why Defendant did not waive this argument by failing to arbitrate. With little guidance from Defendant, the Court admits some difficulty in understanding this particular argument. It appears that Defendant is arguing that it could not have ceased its obligation to contribute to the Plan in September 2015 because it already ceased that obligation in June 2014. As stated above, an employer incurs withdrawal liability on the event of a "complete withdrawal" which can occur "when an employer permanently ceases to have an obligation to contribute under the plan." 29 U.S.C. §§ 1381(a), 1383(a)(1). An "obligation to contribute" arises either "(1) under one or more collective bargaining (or

related) agreements, or (2) as a result of a duty under applicable labor-management relations law..." 29 U.S.C.A. § 1392 (a).  Thus, if Defendant is arguing that its obligation to contribute to the Plan ceased by the June 6, 2014 expiration of the CBA, Defendant is effectively disputing the date on which "complete withdrawal" occurred.

To the extent that the CBA's termination is relevant to Defendant's withdrawal liability, the Court finds that Defendant has waived the issue by failing to arbitrate.  The date on which a complete withdrawal occurred necessarily concerns "whether an employer has completely withdrawn from a plan" and therefore must be arbitrated.  *Colorado Pipe*, 909 F.2d 1385.  "The question of *when* an employer has completely withdrawn within the meaning of 29 U.S.C. § 1383(a) so as to trigger liability strikes this court as precisely the kind of dispute contemplated by Congress in enacting the MPPAA's dispute resolution scheme." *Combs v. Leishman*, 691 F. Supp. 424, 429 (D.D.C. 1988).  Moreover, this is not the type of issue "involving constitutional questions, questions of statutory interpretation outside the MPPAA, and allegations of fraud" for which arbitration can be bypassed. *Colorado Pipe*, 909 F.2d 1385 (citations omitted).  For these reasons, the Court also finds that Defendant's third argument fails to raise a viable defense or genuine issue of material fact such that Plaintiff's motion should be denied.

As such, the Court finds that there is no genuine dispute about any material issue with respect to Plaintiff's withdrawal liability claim.  Because Plaintiff has met its burden as the party with the ultimate burden of proof at trial, summary judgment should be granted in his favor.  Accordingly, the Court **grants** Plaintiff's Motion for Summary Judgment [#41] with respect to Claim Two for unpaid withdrawal liability, plus interest and liquidated damages.

## C.    Damages

The MPPAA provides that "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of [ERISA § 515])."  29 U.S.C. § 1451(b).

When a multiemployer plan can establish that an employer did not make required contributions in violation of ERISA § 515, a court is required to award the plan: (A) unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan; (D) reasonable attorneys fees and costs of legal action to recover the unpaid contributions; and (E) other appropriate legal or equitable relief.  29 U.S.C. § 1132(g)(2). Awarding these items is mandatory where judgment is entered in favor of a qualifying ERISA plan.  *Trustees of the Colo. Statewide Ironworkers (Erector) Joint Apprenticeship & Training Trust Fund v. A & P Steel, Inc.*, 824 F.2d 817, 818 (10th Cir.1987).

### 1.    Withdrawal Liability

The Plan calculated Defendant's withdrawal liability as $100,851 based on a withdrawal date of September 30, 2015.  As discussed above, there is no genuine issue that withdrawal occurred on that date since Defendant has waived the issue by failing to arbitrate. Moreover, other than broadly challenging the Plan's authority to assess withdrawal liability, Defendant does not dispute the liability calculation of $100,851. "Where, as here, the damages sought consist . . . of delinquent withdrawal liability payments and where the employer has otherwise failed to timely request arbitration, courts have the discretion to adopt the sum proffered by the plan, even in the absence of

documentation as to how the figure was calculated." *Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 613 (E.D.N.Y. 2017) (alterations and internal quotation marks omitted) (collecting cases). Accordingly, judgment is entered for Plaintiff on the Plan's behalf in the amount of $100,851 for withdrawal liability.

### 2.    Interest

Under the MPPAA, interest accrues on the total outstanding withdrawal liability beginning on the due date of the first missed payment. 29 U.S.C. § 1399(c)(5). Plaintiff seeks interest on the unpaid withdrawal liability calculated from May 31, 2015. However, Defendant received notice of its withdrawal liability assessment on or about January 11, 2016, and thus was obligated to make its first payment by March 11, 2016, not May 31, 2015. It is not clear to the Court why Plaintiff determined May 31, 2015, as the date from which interest accrues. Therefore, Plaintiff shall provide the Court with an interest calculation accruing from March 11, 2016, (including an amount due through the date of submission and an amount to be added each day thereafter until judgment is finally entered) **on or before October 15, 2018**.

### 3.    Liquidated Damages

ERISA § 502(g)(2)(C) authorizes an award of liquidated damages pursuant to the terms of the Plan Document in an amount not in excess of 20 percent of the total withdrawal liability. 29 U.S.C. § 1132(g)(2)(C)(ii). Here, the Plan Document provides for "liquidated damages in an amount equal to . . . twenty percent (20%) of the unpaid contributions." *Decl. of Castle* ¶ 8. Accordingly, Plaintiff seeks a liquidated damages amount equal to 20 percent of the total withdrawal liability amount of $100,851. Plaintiff

therefore requests $20,170.20 in liquidated damages. Because Defendant does not dispute the Plan's calculation of liquidated damages, the Court adopts those calculations and enters judgment for Plaintiff in the amount of $20,170.20 for liquidated damages.

### 4. Attorneys' Fees and Costs

Finally, ERISA § 502(g)(2)(D) entitles Plaintiffs to reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D). The Tenth Circuit has established five factors district courts may consider when deciding whether to award attorney's fees and costs in an ERISA case:

(1) the degree of the opposing party's culpability or bad faith;

(2) the opposing party's ability to satisfy an award of fees;

(3) whether an award of fees would deter others from acting under similar circumstances;

(4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA; and

(5) the relative merits of the parties' positions.

*Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013) (citation omitted). "No single factor is dispositive and a court need not consider every factor in every case." *Id.* (citation omitted); *see also Trustees of Eighth Dist. Elec. Pension Fund v. Wasatch Front Elec. & Const., LLC*, 598 F. App'x 563, 566 (10th Cir. 2014) (unpublished) (applying the *Cardoza* factors where attorneys' fees were sought under a withdrawal liability claim).

Plaintiff has not addressed these factors in the Motion [#41] in requesting attorneys' fees and costs. Moreover, D.C.COLO.LCivR 54.3(a) requires that any motion for attorneys'

fees be supported by an affidavit. For each person whom fees are claimed, the rule additionally requires: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed. D.C.COLO.LCivR 54.3(b). The affidavit provided by Plaintiff's counsel does not satisfy these requirements because it includes neither a summary of relevant qualifications and experience nor a detailed description of the services rendered and the amount of time spent. *Decl. of Reinken* [#41-2].

Accordingly, the Court orders supplemental briefing regarding Plaintiff's request for attorneys' fees and costs. In the additional briefing, the parties are expected to discuss the five *Cardoza* factors and Plaintiff shall attach an affidavit that complies with D.C.COLO.LCivR 54.3(b). The Court refrains from deciding whether to award Plaintiff's attorneys' fees and costs, until it has received this additional briefing. Plaintiff's additional briefing shall be filed **on or before October 15, 2018**. Any response by Defendant shall be filed **on or before October 29, 2018**. No reply will be permitted.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that Plaintiff's Motion [#41] is **GRANTED in part** and **DENIED in part**. The Motion is **granted** to the extent that judgment is entered in favor of Plaintiff on Claim Two for withdrawal liability. The Motion is **denied** to the extent Plaintiff seeks judgment in its favor on Claim One for delinquent contributions.

IT IS FURTHER **ORDERED** that final judgment shall enter in favor of Plaintiff on Claim Two after receipt of Plaintiff's interest calculation and additional briefing related to attorneys' fees and costs.

IT IS FURTHER **ORDERED** that Claim One against Defendant for delinquent contributions is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

IT IS FURTHER **ORDERED** that the following settings are **VACATED**:

- Final Pretrial Conference set for December 14, 2018, at 1:30 p.m.;

- Trial Preparation Conference set for December 14, 2018, at 1:30 p.m.; and

- Bench Trial set for December 17-19, 2018, at 9:00 a.m.


DATED: September 28, 2018 at Denver, Colorado.


BY THE COURT:

Kristen L. Mix
United States Magistrate Judge